UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| In re: | Case Number: 14-13531-7 |
| RANDY JOSEPH NETZER, | |
| Debtor. | |

---

| | |
|---|---|
| RANDY JOSEPH NETZER, | |
| Plaintiff, | |
| v. | Adversary Number: 15-130 |
| OFFICE OF LAWYER REGULATION, MATTHEW ANICH and WISCONSIN DEPARTMENT OF REVENUE, | |
| Defendants. | |

---

**MEMORANDUM DECISION**

This adversary proceeding involves a lawyer, Randy Joseph Netzer ("Netzer"), who was disciplined by the Wisconsin Office of Lawyer Regulation ("OLR"). The discipline resulted in the imposition of costs against Netzer. The Wisconsin Supreme Court imposed costs in the amount of $9,222.21 against him on January 29, 2014. (Dkt. #38) Netzer seeks a determination that the costs assessed are dischargeable. OLR argues the costs are nondischargeable as fines or penalties imposed by a governmental agency.

For the reasons stated below, the Court concludes that the costs imposed by OLR are fines and penalties within the meaning of 11 U.S.C. § 523(a)(7), and thus the debt is nondischargeable. Therefore, dismissal of this case is required.

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1334 and the Western District of Wisconsin's order of reference entered under 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I), and thus the Court may enter final judgment. 28 U.S.C. § 157(b)(1).

## PROCEDURAL BACKGROUND

Debtor Randy Joseph Netzer filed bankruptcy on August 14, 2014.  He filed a document he captioned "Notice of Motion and Motion for Declaration of Dischargeability" on December 15, 2014, asserting that under 11 U.S.C. § 523(a)(7), the debt to OLR should be declared dischargeable (the "Motion"). On December 18, 2014, Netzer received a discharge. On December 19, 2014, an objection to the Motion was filed. On January 8, 2015, an Order was entered denying the Motion on the ground that a proceeding to determine dischargeability of a debt must be conducted by adversary proceeding. *See* Fed. R. Bankr. P. 7001. A Final Decree was entered on January 9, 2015, and the bankruptcy case was closed.

After the bankruptcy case was closed, there were apparently communications between Netzer and OLR. OLR sought payment of the costs imposed and advised Netzer that if he could not pay in full immediately, he should contact OLR to discuss payments. Netzer responded stating his position that the costs had been discharged. OLR communicated its disagreement with that position.

On August 10, 2015, Netzer filed a motion to reopen the bankruptcy case so that he could file this adversary proceeding. The case was reopened on August 26, 2015. The adversary proceeding was filed on September 21, 2015. It seeks a declaration that the costs assessed against him by OLR in connection with the investigation and disciplinary proceedings are dischargeable. In addition to OLR, Netzer names the Wisconsin Department of Revenue and asks that an order be entered providing that no third party, including DOR and Matthew Anich, be permitted "to collect on said debt." The Defendants filed an answer on September 29, 2015. The parties filed cross-motions for summary judgment.

## FACTUAL BACKGROUND

To the extent factual findings are necessary to reach the conclusions set forth in this decision, the following description of background facts constitutes such findings of fact. *See* Fed. R. Bankr. P. 7052.

Netzer was in a relationship that ended. Netzer undertook actions related to the former girlfriend and her family that ultimately led to a disciplinary investigation and to a finding of probable cause that there had been a violation of Wisconsin Supreme Court Rules governing the legal profession. At the time of the OLR investigation, there were also criminal charges pending related to the same conduct that was the subject of the OLR complaint. Suffice it to say, the disciplinary matter arose from a relationship gone wrong and Netzer's actions thereafter. The details of the actions are not relevant to the matter before this Court.

Netzer availed himself of the right to challenge the investigation and to challenge the disciplinary recommendation in the Wisconsin Supreme Court. Although he stated the Wisconsin Supreme Court could decide the matter on briefs without oral argument, argument was scheduled and conducted. The Wisconsin Supreme Court disciplined Netzer as a result of his conduct, including imposing costs on him in the amount of $9,222.21.

Although Netzer argues to this Court that his conduct was protected speech under the First Amendment, that argument was raised (and rejected) in the Wisconsin Supreme Court disciplinary action. Any such claims should have been addressed in that proceeding or an appeal thereof. Whether the conduct regarding a former girlfriend was appropriate or was a violation of either the Wisconsin Rules of Professional Conduct or any criminal statutes is also not relevant to this adversary proceeding.

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (applied through Fed. R. Bankr. P. 7056). The Court's role is to determine whether there is a genuine issue for trial, not to weigh the evidence to determine the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

As a procedural matter, on summary judgment "the burden is on the moving party to establish that there is no genuine issue about any material fact, or that there is an absence of evidence to support the nonmoving party's

4

case, and that the moving party is entitled to judgment as a matter of law." 20 Charles Alan Wright, Arthur R. Miller & Edward Cooper, *Federal Practice and Procedure* § 105 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). There are no genuine issues of material fact and summary judgment is appropriate.

In general, a discharge enjoins action to collect any discharged pre-petition debts. It does not enjoin attempts to collect debts that were not discharged in the bankruptcy case. *See, e.g., In re McMullen*, 189 B.R. 402 (Bankr. E.D. Mich. 1995).

If, as in this case, the debtor receives a general discharge, specific types of debts may, nevertheless, be deemed nondischargeable. Those debts are specifically enumerated in the Code. An objection to dischargeability of a claim or a declaration of dischargeability, as applicable, must be brought by adversary proceeding. Fed. R. Bankr. P. 7001.  *See also* Fed. R. Bankr. P 4007(e).

The procedure for determination of dischargeability under section 523(a)(2), (4), or (6) requires that complaints must be brought within a specified time period and requires that the claimant take affirmative action to seek determination of nondischargeability. If no such action is filed, the claim is discharged under the general discharge. Other types of claims, including claims under section 523(a)(7), have no time period for determination of dischargeability and an action to determine dischargeability may be brought by either the debtor or the claimant. In fact, these claims may be determined

5

years after a bankruptcy case is closed. *See Walker v. Sallie Mae Servicing Corp. (In re Walker)*, 427 B.R. 471 (B.A.P. 8th Cir. 2010), *aff'd,* 650 F.3d 1227 (8th Cir. 2011).

The debt at issue in this adversary proceeding falls into the latter category of claims. The bankruptcy court has jurisdiction to determine dischargeability and may do so at the request of either the debtor or a creditor. Robert E. Ginsburg, Robert D. Martin & Susan V. Kelley, *Ginsberg & Martin on Bankruptcy* § 11.07[A][2] (5th ed. 2015). As noted in *Ginsberg & Martin*, creditors holding this type of claim may, in effect, do nothing and "then, after the bankruptcy, sue the debtor in state court for any unpaid balance." A determination of whether the debt was discharged could, in that circumstance, be made either by the state court or, upon the reopening of the bankruptcy, in the bankruptcy court. *Id.*

The claim in this case is alleged to be nondischargeable as a fine, penalty or forfeiture imposed by a governmental unit and not as compensation for actual pecuniary loss. 11 U.S.C. § 523(a)(7). Thus, there are two issues to be decided:

- Is OLR a government unit?[1]; and

- Are the costs imposed on Debtor by the Wisconsin Supreme Court "fines, penalties or forfeitures" and not "compensation for actual pecuniary loss"?

---

[1] There is no dispute that the Wisconsin Department of Revenue is a government agency. However, the parties also agree that DOR was acting as a collection agent for OLR and the debt being collected was not owed to DOR but, rather, to OLR.

6

### A.  The Office of Lawyer Regulation is a Governmental Unit.

The Wisconsin Office of Lawyer Regulation is a governmental unit. Governmental units include an "agency, or instrumentality of . . . a State . . . ." 11 U.S.C. § 101(27). This definition is to be construed in the broadest sense. H.R. Rep. No. 595, 95th Cong., 1st Sess. 311 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6268.

The Wisconsin Supreme Court is responsible for the regulation of the practice of law in this state. It is undisputed that the Supreme Court is a governmental unit. Through its rulemaking powers, it established the State Bar of Wisconsin. SCR 10. It established the rule that attorneys licensed in this state are "subject to discipline for professional misconduct, as provided in SCR 20:8.4." SCR 11.01. The Wisconsin Supreme Court also established a lawyer regulatory system, including the creation of the Office of Lawyer Regulation. SCR 21. This system was "established to carry out the supreme court's constitutional responsibility to supervise the practice of law and protect the public from misconduct by persons practicing law in Wisconsin." *Id.* As a creation of the Wisconsin Supreme Court, it is an arm and instrumentality of the court that aids the court in fulfilling its duty and authority to regulate the practice of law. *Mayhugh v. State*, 2015 WI 77, ¶ 15, 364 Wis. 2d 208, 867 N.W.2d 754. *See also Tobkin v. Fla. Bar (In re Tobkin)*, 509 B.R. 731 (S.D. Fla. 2014), *aff'd*, 578 F. App'x 962 (11th Cir. 2014); and *Board of Attorneys Prof'l*

*Responsibility v. Haberman (In re Haberman),* 137 B.R. 292 (Bankr. E.D. Wis. 1992).

The procedures employed by OLR in conducting investigations are defined by the Wisconsin Supreme Court in SCR 21 and 22. The Wisconsin Supreme Court requires that all attorneys licensed to practice in Wisconsin pay an amount necessary to pay the costs of the Lawyer Regulation System and the continuing education functions of the Board of Bar Examiners as set by the Supreme Court each year. SCR 10.03(5). Although collected by the State Bar of Wisconsin, these assessments are imposed by the Wisconsin Supreme Court. *Id.*

Applying the governmental function approach adopted in *Haberman* and recognizing the pervasive nature of the definition of "governmental unit," there can be no doubt that OLR is a "governmental unit." This conclusion is also supported by the plain language of the Wisconsin Supreme Court Rules, by 11 U.S.C. § 101(27), and by state court jurisprudence. OLR is an arm of the Wisconsin Supreme Court and is a governmental unit.

### B.    The Costs Imposed by OLR for the Disciplinary Proceedings are Fines or Penalties Within the Meaning of 11 U.S.C. § 523(a)(7).

Turning to the second issue, the costs assessed by OLR are a fine or penalty. It is the policy of the Wisconsin Supreme Court that "upon a finding of misconduct it is appropriate to impose costs" on the attorney. SCR 22.24. The assessment is not mandatory and the amount assessed is within the discretion of the court taking into account various factors. *Id.* The purpose of such

assessments has not changed. As summarized by Judge Shapiro,

> Rather, the rule is primarily intended to deter attorneys from engaging in improper conduct and to convey the message to attorneys and to the public alike that the practice of law is closely scrutinized in order to maintain the Bar's integrity and high standards of professional conduct.

*Board of Attorneys Prof'l Responsibility v. Haberman*, 137 B.R. 292, 295 (Bankr. E.D. Wis. 1992). The costs are an expenditure by the government as an expense of carrying out its duty to regulate the profession of law. The expenses incurred were not part of a creditor-debtor relationship but, instead, were a cost of governing. *Id.*

Although the numbering and language of SCR 21.06 has changed slightly since the *Haberman* decision, its substance has not. The following types of authorized discipline are contained in SCR 21.16:

> (1m) Any of the following may be imposed on an attorney as discipline for misconduct pursuant to the procedure set forth in SCR chapter 22:
>
>> (a) Revocation of license to practice law.
>> (b) Suspension of license to practice law.
>> (c) Public or private reprimand.
>> (d) Conditions on the continued practice of law.
>> (e) Monetary payment.
>> (em) Restitution, as provided under sub. (2m).
>> (f) Conditions on seeking license reinstatement.

SCR 21.16.

To paraphrase the decision in *Haberman*, payment of costs clearly falls within the types of discipline as one form of a condition for seeking reinstatement of the license to practice law. It may also fall within the form of discipline that is a "monetary payment."

9

The meaning of the words "misconduct" and "discipline" as used in SCR 21.16 have not changed since the *Haberman* decision. Those words continue to indicate that the purpose of the rule is more akin to punishment than to compensation for actual pecuniary loss. According to *Black's Law Dictionary*, "misconduct" means "[a] dereliction of duty; unlawful, dishonest, or improper behavior." *Black's Law Dictionary* (10th ed. 2014 at 1149). In the context of disciplinary proceedings, its meaning is clarified by the definition of "discipline." Discipline is defined as

> Punishment intended to correct or instruct; esp., a sanction or penalty imposed after an official finding of misconduct, such as punishment or penalties . . . imposed by a disciplining agency on an attorney who has breached a rule of professional ethics.

*Black's Law Dictionary* (10th ed. 2014 at 562).

While it appears the parties agree that the amount at issue is equal to the costs and attorneys' fees accrued, that was merely a yardstick available for establishing some amount to be imposed. The amount could vary in the court's discretion and should not be viewed simply as recompense for charges incurred. Rather, it is part of a penalty. *See In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). The imposition of costs is clearly penal because no costs can be assessed unless the attorney is found to have engaged in misconduct. *Betts v. Attorney Registration & Disciplinary Comm'n (In re Betts)*, 165 B.R. 870, 873 (N.D. Ill. 1994). Like the court in *Betts*, this Court concludes it would be poor policy to permit attorneys to elude punishment imposed for professional

improprieties by simply filing a bankruptcy. *Id.* at 875 (quoting *In re Williams*, 158 B.R. 488, 490 (Bankr. D. Idaho 1993)).

There are only two cases[2] holding that such assessments are dischargeable. Both are readily distinguishable. The first, *Love v. Scott (In re Love)*, 442 B.R. 868 (Bankr. M.D. Tenn. 2011), was based on the Tennessee disciplinary rules. Those rules make the imposition of costs mandatory. Judge Lundin concluded the Tennessee rules were merely intended to defray the costs and expenses of the proceeding and served no other public purpose. A Michigan bankruptcy court followed the holding in *Love* on the ground that Michigan is directed to assess "basic administrative costs" based on the type of proceeding, and were thus compensatory in nature. *Basquin v. Stasson (In re Stasson)*, 472 B.R. 748 (Bankr. E.D. Mich. 2012). A contrary decision was reached in *State Bar v. Doerr (In re Doerr)*, 185 B.R. 533 (Bankr. W.D. Mich. 1995).

Sanctions imposed by OLR advance the state's interest in maintaining the integrity of the legal profession and protecting the public from misconduct by persons licensed to practice in Wisconsin. If costs assessed as part of attorney disciplinary proceedings are dischargeable, it would "impede [OLR]'s ability to carry out" the functions and duties the Supreme Court has determined are its purpose. Any interference by this Court "with attorney

---

[2] A third case did decide such claims were dischargeable. The case was *State Bar v. Taggart (In re Taggart)*, 249 F.3d 987 (9th Cir. 2001). The statute at issue was markedly different from that in Wisconsin. To erase any doubt that the assessment of costs was intended to be a penalty, the California legislature enacted legislation eliminating any doubt.

disciplinary proceedings must be exercised with judicial restraint and in full recognition of the purpose for which [OLR] was created." *Haberman* at 296.

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion is denied and the Defendants' motion for summary judgment is granted. The costs assessed against Mr. Netzer are nondischargeable under 11 U.S.C. § 523(a)(7).

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order and judgment consistent with this decision will be entered.

Dated: February 3, 2016.

BY THE COURT:

_____

Hon. Catherine J. Furay
U.S. Bankruptcy Judge